1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LEE THAO,                               No. 11-cv-2235 KJM AC P

12            Plaintiff,

13       v.                                  FINDINGS AND RECOMMENDATIONS

14   KATHLEEN DICKINSON,

15            Defendant.

16

17       Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this action for

18   damages and injunctive relief filed pursuant to 42 U.S.C. § 1983.  Defendant has moved to

19   dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 25.  Plaintiff

20   opposes the motion.  ECF No. 28.  For the reasons outlined below, the undersigned recommends

21   that the court grant the motion, dismiss the amended complaint without prejudice, and grant

22   plaintiff leave to file a second amended complaint.

23       **BACKGROUND**

24       On June 11, 2010, plaintiff was housed at the California Medical Facility ("CMF").  On

25   that date, he was placed in administrative segregation ("Ad-Seg") after the Investigative Services

26   Unit ("ISU") received information that his presence "on the CMF mainline would jeopardize the

27   safety and security of [plaintiff], other inmates, staff and the institution."  ECF No. 11 at 29.

28       In June 15, 2010, plaintiff was retained in ASU because he had become part of an

1

1   investigation, being conducted by ISU staff, into a conspiracy to murder an employee of the

2   California Department of Corrections and Rehabilitation ("CDCR").  ECF No. 11 at 33.

3   According to the ASU Placement Notice, or "114-D" Form dated June 15, 2010, plaintiff was to

4   remain in Ad-Seg pending completion of the investigation.  Id.

5        The Institutional Classification Committee ("ICC") conducted an initial review of

6   plaintiff's Ad-Seg placement on June 15, 2010.  ECF No. 11 at 30.  Though the copy of the

7   chrono provided to the court is partially blocked, the chrono reads that Warhover, P.A.,

8   representing the medical department, was present in ICC to evaluate plaintiff' ability to

9   understand and to participate in the meeting.  Id.  Also present were G. Thumser, Chief Deputy

10  Warden; L. Flores, Associate Warden; D. Thomas, Facility Captain; and G. Navarro, CCII as

11  Recorder.  Id.  The chrono further reads that plaintiff waived his right to 72 hour notice, and that

12  he was cleared for non-contact visiting effective that day.  Id.

13       On June 22, 2010, the Institutional Classification Committee ("ICC") conducted a review

14  of plaintiff's Ad-Seg placement.  ECF No. 11 at 34.  According to the chrono, Sgt. Ramos, who is

15  not a defendant, was present as plaintiff's assigned Staff Assistant.  Id.  Also present at the

16  meeting were: V. Singh; L.N. Fores, AW (A), D. Thomas, FC, S. Champen, NP, and K. Allen,

17  CCI, as Recorder.  Id.  Defendant K. Dickinson is listed as the Chairperson, but V. Singh has

18  signed in her place ("V. Singh for Chairperson: K. Dickinson, Warden").  Id.

19       The ICC supported the continuance of plaintiff's Ad-Seg placement, pending the outcome

20  of the ongoing investigation, and recommended a 45 day ASU extension.  Id.

21       By June 25, 2010, the investigation was complete.  ECF No. 11 at 55.

> The investigation has been completed and THAO [sic] participation in this conspiracy could not be determined.  The conspiracy is not proven at this time.  However, the facts revealed in the investigation could not exonerate THAO as a suspect in the investigation.  I recommending [sic] inmate THAO be transferred from CMF due to facts revealed in the above mentioned investigation.  The particular elements of the investigation have been deemed as highly sensitive. For this reason, the investigational reports will be kept in the CMF Investigative Services Unit (ISU) and in the Office of Correctional Safety until the conclusion of a concurrent outside agency investigation is complete.

28  Id.  On July 21, 2010, noting the completed investigation and its findings, non-defendant Lt.

2

1    Cates retained plaintiff in Ad-Seg pending ICC review.  ECF No. 11 at 35.

2           On July 27, 2010, plaintiff appeared before the ICC for a review of his Ad-Seg placement.

3    ECF No. 11 at 36.  S. Champen, Nurse Practitioner, was present in ICC to evaluate plaintiff's

4    ability to understand and to participate in the meeting.  Id.  Also present were: defendant

5    Dickinson, Warden; J. Gonzalez, Associate Warden; L. Fores, Facility Captain; and K. Alden,

6    CCII, as Recorder.  Id.  The classification chrono reads that plaintiff did not meet the criteria for a

7    staff assistant or investigative employee, that plaintiff did not request witnesses, and that plaintiff

8    waived his right to 72 hour notice.  Id.  The ICC recommended a non-adverse transfer of plaintiff

9    to another institution:

10              [A]lthough there was not sufficient evidence to substantiate, at this
               time, the allegations of "Conspiracy to Commit Murder on a CDCR
11              Employee." [sic] A threat against staff cannot be ignored, as such,
               CMF is initiating a non adverse transfer to CMC-E-III or PVSP-III
12              (as an alternate choice) as a preventative measure, due to the
               extreme liabilities and risk against this staff. . . .[T]his matter is not
13              yet resolved and continues to be a subject of investigation by
               external law enforcement Agencies.
14

15   Id.

16          Plaintiff subsequently appealed the procedures used at plaintiff's July 27, 2010 hearing

17   (Log No. CMF-10-02066), and asked, among other things, to have his transfer to another

18   institution halted.  See ECF No. 11 at 19.  Plaintiff's appeals were denied at all levels, including

19   the Second Level Appeal, which was signed on December 21, 2010, by V. Singh on behalf of

20   Kathleen L. Dickinson, Warden.  ECF No. 11 at 24-25.

21          Plaintiff also appealed his Ad-Seg placement (Log No. CMF-M-10-01924), challenging

22   the July 21, 2010 placement notice.  ECF no. 11 at 44.  Plaintiff's appeals were denied at all

23   levels, including the Second Level Appeal, which was signed on September 8, 2010 by V. Singh

24   for Kathleen L. Dickinson, Warden.  ECF No. 11 at 48-49.

25          Plaintiff filed the instant action against defendant Dickinson on August 24, 2011.  ECF

26   No. 1.  After the initial complaint was dismissed with leave to amend, plaintiff filed an amended

27   complaint on December 20, 2011.  On February 9, 2012, the court ordered the amended

28   complaint served on defendant Dickinson.  ECF No. 14.  Defendant Dickinson has now moved to

1    dismiss the amended complaint without prejudice.  ECF No. 25.

2            **The Complaint**

3            In his amended complaint, plaintiff makes the following claims:

4        (1)  That plaintiff's Constitutional Rights were violated when he was placed in Ad-Seg,

5             and housed there until ICC determined to transfer him (Argument 1, ECF No. 11 at 7);

6        (2)  That three African-American inmates also housed in Ad-Seg, apparently under the

7             same investigation as the plaintiff (who is Asian), were released into general

8             population after the investigation was concluded, resulting in racial discrimination and

9             deprivation of plaintiff's constitutional rights (Argument 1, ECF No. 11 at 7);

10       (3)  That plaintiff's due process rights were violated because the evidence of plaintiff's

11            role in the alleged conspiracy was insufficient or unreliable, and plaintiff should have

12            been released from Ad-Seg "when it was apparent there was no conspiracy to commit

13            murder." (Argument 2, ECF No. 11 at 7-8);

14       (4)  Defendant Dickinson violated plaintiff's Eighth Amendment right to be free of cruel

15            and unusual punishment because plaintiff's placement in Ad-Seg on "Maximum

16            Custody" resulted in plaintiff's loss of privileges, including inability to contact his

17            ailing father by phone, causing plaintiff traumatic emotional damage (Argument 3,

18            ECF No. 11 at 8-9);

19       (5)  Defendant Dickinson violated plaintiff's Equal Protection rights because she, in her

20            official capacity, agreed with ICC decisions to retain petitioner in Ad-Seg, based

21            solely on plaintiff's race, because plaintiff is Asian and the potential victim was Asian.

22            Plaintiff's transfer ignored his family ties, and hardship to his family. (Argument 3,

23            ECF No. 11 at 9);

24       (6)  Plaintiff's rights were violated when the ICC refused to transfer him to CSP-Solano or

25            Folsom State Prison, clearly showing that the ICC's actions were arbitrary, capricious,

26            irrational, and an abuse of discretion. (Argument 4, ECF No. 11 at 10);

27       (7)  Plaintiff's appeals were denied, and plaintiff was given the run-around, without having

28            his questions answered (Argument 5, ECF No. 11 at 10-11).

                                                4

As relief, plaintiff seeks: (1) a declaration that defendant's actions violated his Constitutional rights; (2) removal, presumably from his file, of any written statements related to the conspiracy charge; and (3) money damages. ECF No. 11 at 11-12.

**The Motion to Dismiss**

Defendant moves to dismiss the amended complaint on the following grounds:

(1) Defendant Dickinson is not liable for the actions of non-defendants under a theory of respondeat superior (ECF No. 25 at 5-6);

(2) Plaintiff's only allegation of personal conduct by defendant Dickinson is her participation in the July 27, 2010 ICC meeting which approved plaintiff's non-adverse transfer to another institution, so this court may only consider whether, on July 27, 2010, defendant wrongly: (a) approved plaintiff's transfer to another prison; and (2) approved plaintiff's retention in Ad-Seg for another five weeks until he was transferred on September 9, 2010 (ECF No. 11 at 6);

(3) Plaintiff did not have a constitutional right to remain at CMF (ECF No. 25 at 7);

(4) Plaintiff's allegation that his time in Ad-Seg from July 27, 2010 through September 9, 2010 violated due process is insufficient to state a claim against defendant (ECF No. 25 at 7-8); and

(5) Plaintiff fails to state an equal protection claim, as he fails to sufficiently allege that he was treated differently than any similarly situated inmates based upon race (Reply, ECF No. 29 at 4-5).

Plaintiff opposes the motion, arguing:

(1) Defendant sat as head of the committee, and so directly acted as required to establish liability (ECF No. 28 at 1-2);

(2) While plaintiff acknowledges that he has no constitutional right to remain at CMF, African-American prisoners were not transferred, violating plaintiff's due process and equal protection rights (ECF No. 28 at 2).

**Analysis**

The undersigned recommends that defendant's motion to dismiss be granted, and that

5

1  plaintiff be granted leave to amend.

2          In considering a motion to dismiss, the court must accept as true the allegations of the

3  complaint in question.  See Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740

4  (1976).  The court must also construe the pleading in the light most favorable to the party

5  opposing the motion and resolve all doubts in the pleader's favor.  See Jenkins v. McKeithen, 395

6  U.S. 411, 421 (1969).  A motion to dismiss for failure to state a claim should not be granted

7  unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that

8  would entitle the plaintiff to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984);

9  Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

10         A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

11  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

12  Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

13  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

14  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

15  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

16  Cir. 1989); Franklin, 745 F.2d at 1227.

17         A complaint must contain more than a "formulaic recitation of the elements of a cause of

18  action;" it must contain factual allegations sufficient to "raise a right to relief above the

19  speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "The pleading

20  must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of]

21  a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and

22  Procedure 1216, pp. 235-235 (3d ed. 2004).   "[A] complaint must contain sufficient factual

23  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal,

24  556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility

25  when the plaintiff pleads factual content that allows the court to draw the reasonable inference

26  that the defendant is liable for the misconduct alleged."  Id.

27         **Affirmative Action or Omission by Defendant**

28         The Civil Rights Act under which this action was filed provides as follows:

6

1

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

2

3

4   42 U.S.C. § 1983.

5          The statute requires that there be an actual connection or link between the actions of the

6   defendants and the deprivation alleged to have been suffered by plaintiff.  See, e.g., Starr v. Baca,

7   652 F.3d 1202, 1205-06 (9th Cir. 2011), cert. denied, 132 S.Ct. 2101 (2012).  "A person

8   'subjects' another to the deprivation of a constitutional right, within the meaning of  § 1983, if he

9   does an affirmative act, participates in another's affirmative acts or omits to perform an act which

10  he is legally required to do that causes the deprivation of which complaint is made."  Johnson v.

11  Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

12          **Supervisory Liability**

13          Plaintiff may not maintain any claims against defendant solely on account of her role as

14  Warden or, as plaintiff describes it, her "position of final say and judgment," (ECF No. 28 at 1),

15  because supervisory personnel are generally not liable under § 1983 for the actions of their

16  employees under a theory of respondeat superior.  Therefore, when a named defendant holds a

17  supervisorial position, the causal link between him and the claimed constitutional violation must

18  be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.

19  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Vague and

20  conclusory allegations concerning the involvement of official personnel in civil rights violations

21  are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

22          The Ninth Circuit has held that a supervisor may be liable

23

> if there exists either (1) his or her personal involvement in the
> constitutional deprivation, or (2) a sufficient causal connection
> between the supervisor's wrongful conduct and the constitutional
> violations.  Supervisory liability exists even without overt personal
> participation in the offensive act if supervisory officials implement
> a policy so deficient that the policy "itself is a repudiation of
> constitutional rights" and is "the moving force of the constitutional
> violation."  (internal citations and quotations omitted).

24

25

26

27

28

7

1   Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

2          The Ninth Circuit has recently clarified the parameters of supervisor liability in the wake

3   of Ashcroft and Starr:

> Iqbal makes crystal clear that constitutional tort claims against
> supervisory defendants turn on the requirements of the particular
> claim – and, more specifically, on the state of mind required by the
> particular claim – not on a generally applicable concept of
> supervisory liability . . . . [B]ecause Eighth Amendment claims for
> cruel and unusual punishment generally require only deliberate
> indifference (not specific intent), a Sheriff is liable for prisoner
> abuse perpetrated by his subordinates if he knowingly turns a blind
> eye to the abuse.  See [Starr, 652 F.3d] at 1205.  The Sheriff need
> not act with the purpose that the prisoner be abused.  See id. at
> 1206-07 ("A showing that a supervisor acted, or failed to act, in a
> manner that was deliberately indifferent to an inmate's Eighth
> Amendment rights is sufficient to demonstrate the involvement –
> and the liability – of that supervisor.")  Put simply, constitutional
> tort liability after Iqbal depends primarily on the requisite mental
> state for the violation alleged.

13  OSU Student Alliance v. Ray, 699 F.3d 1053, 1071 (9th Cir. 2012).

14         In this case, plaintiff's only link between his claims and any action by defendant appears

15  to be defendant's participation in the July 27, 2010 ICC meeting.  See ECF No. 11 at 8-10.

16  Specifically, plaintiff claims that defendant, who is the warden at CMF, caused the violation of

17  plaintiff's federal rights when (1) she agreed with the ICC's decision not to release plaintiff when

18  other, African American prisoners were released from Ad-Seg; and (2) plaintiff's privileges were

19  reduced as a result of his "Maximum Custody" designation.  Id.  Because plaintiff has not named

20  any other defendants, and because plaintiff may not hold defendant liable for the actions of her

21  subordinates, plaintiff's claims must be limited to those arising out of the July 27, 2010 ICC

22  meeting.

23         **Procedural Due Process**

24         The Due Process Clause protects Plaintiff against the deprivation of liberty without the

25  procedural protections to which he is entitled under the law.  Wilkinson v. Austin, 545 U.S. 209,

26  221 (2005).  To state a claim, Plaintiff must first identify the interest at stake.  Wilkinson, 545

27  U.S. at 221.  Liberty interests may arise from the Due Process Clause or from state law.  Id.  The

28  Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse

8

1   conditions of confinement, id. at 221–22 (citations and quotation marks omitted), and under state

2   law, the existence of a liberty interest created by prison regulations is determined by focusing on

3   the nature of the condition of confinement at issue, id. at 222–23 (citing Sandin v. Conner, 515

4   U.S. 472, 481–84 (1995)) (quotation marks omitted).  Liberty interests created by prison

5   regulations are generally limited to freedom from restraint which imposes atypical and significant

6   hardship on the inmate in relation to the ordinary incidents of prison life.  Wilkinson, 545 U.S. at

7   222–23 (citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d

8   716, 718 (9th Cir.), cert. denied, 552 U.S. 959 (2007).

9          Plaintiff's allegations do not support the existence of a liberty interest in remaining free

10   from Ad-Seg or in remaining at CMF.  See Wilkinson, 545 U.S. at 222–23; Meachum v. Fano,

11   427 U.S. 215, 224–25 (1976); Myron, 476 F.3d at 718; see also Resnick v. Hayes, 213 F.3d 443,

12   448–49 (9th Cir. 2000) (no liberty interest in remaining free from the SHU pending disciplinary

13   hearing and no liberty interest in avoiding SHU confinement); May v. Baldwin, 109 F.3d 557,

14   565 (9th Cir.), cert. denied, 522 U.S. 921 (1997) (no liberty interest in remaining free from

15   disciplinary segregation unit pending disciplinary hearing).  In the absence of a protected liberty

16   interest, plaintiff's claim that he was retained in Ad-Seg and/or endorsed for transfer without due

17   process fails.  Wilkinson, 545 U.S. at 221.

18          Notwithstanding that deficiency, administrative segregation entitles plaintiff only to notice

19   and an opportunity to be heard, which his allegations and exhibits demonstrate he received.

20   Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir.2003) (citing Toussaint v. McCarthy, 801 F.2d 1080,

21   1100 (9th Cir.1986), abrogated in part on other grounds, Sandin, 515 U.S. 472).  Plaintiff is not

22   entitled to the assignment of an investigative employee, the appearance of inmate witnesses, or

23   any of the other procedural protections which accompany prison disciplinary hearings.  Toussaint,

24   801 F.2d at 1100–01; see also Wolff v. McDonnell, 418 U.S. 539, 563–71 (1974) (identifying the

25   five minimal procedural protections which must accompany prison disciplinary proceedings).

26   Therefore, Plaintiff fails to state a claim for denial of due process arising out of his Ad-Seg

27   placement and retention and/or his endorsement for transfer to a different institution.

28

**Cruel and Unusual Punishment in Violation of the Eighth Amendment**

"'Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'"  Somers v. Thurman, 109 F.3d 614, 623 (9th Cir.), quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992) (omitting internal quotations and citations), cert. denied, 522 U.S. 852 (1997).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994).

However,"[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety."  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000), citing, inter alia, Farmer, 511 U.S. at 832, cert. denied, 532 U.S. 1065 (2001); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982) ("[A]n institution's obligation under the eighth amendment is at an end if it furnishes sentenced prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety" [internal quotations omitted]).

An Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one objective and one subjective.  Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (en banc), quoting Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir.), cert. denied, 514 U.S. 1065 (1995).  Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities. Id.  The subjective requirement, relating to defendant's state of mind, requires deliberate indifference.  Id.

In this case, plaintiff's remaining Eighth Amendment claims must fail because does not allege that he has been deprived of adequate shelter, food, clothing, sanitation, medical care, or personal safety.  Instead, he claims that he was deprived of full privileges, such as daily phone

1    calls and contact visits.[1]  Plaintiff has no Eighth Amendment right to full privileges, and

2    accordingly their deprivation does not support a cognizable claim.

3           Additionally, plaintiff's claims for compensatory damages for emotional damages based

4    on his loss of privileges are barred by the Prison Litigation reform Act.  See 42 U.S.C. §

5    1997e(e), which provides that no federal civil action may be brought by a prisoner for mental or

6    emotional injury suffered while in custody without a prior showing of physical injury.  The

7    physical injury need not be significant, but it must be more than de minimis.  Oliver v. Keller,

8    289 F.3d 623, 627 (9th Cir. 2002).  In this case, plaintiff has not alleged any physical injury, let

9    alone one that is more than de minimis, in connection with his loss of privileges.

10          Furthermore, to the extent plaintiff is attempting to allege that his family members

11   suffered hardship or emotional injuries as a result of plaintiff's transfer, such claims are not

12   cognizable in this action.  Constitutional claims are personal, and cannot be asserted vicariously.

13   United States v. Mitchell, 915 F.2d 521, 526 n.8 (9th Cir. 1990), cert. denied, 500 U.S. 906

14   (1991).  Moreover, while a non-attorney may appear pro se on his own behalf, he has no authority

15   to appear as attorney for other than himself.  Johns v. County of San Diego, 114 F.3d 874, 876

16   (9th Cir. 1997), citing C.E. Pope Equity Trust v. United States, 818 F.2d 696, 697 (9th Cir.

17   1987)..

18        **Equal Protection**

19          "The Equal Protection Clause . . . is essentially a direction that all persons similarly

20   situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432,

21   439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)).  An equal protection claim may be

22   established by showing that the defendant intentionally discriminated against the plaintiff based

23   on the plaintiff's membership in a protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th

24   Cir. 2003), cert. denied, 543 U.S. 825 (2004), or that similarly situated individuals were

25   intentionally treated differently without a rational relationship to a legitimate state purpose,

26   Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546

27

28
     _____
     [1]   It is not clear in the Amended Complaint if plaintiff was actually receiving full privileges
     before June 11, 2010.

1   F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir.

2   2008).

3         A plaintiff must allege sufficient facts either showing intentional unlawful discrimination

4   or "that are at least susceptible of an inference of discriminatory intent." E.g., Monteiro v. Tempe

5   Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998); see Iqbal, 556 U.S. at 678.

6   Conclusory allegations by themselves do not establish an equal protection violation without proof

7   of invidious discriminatory intent.  Village of Arlington Heights v. Metropolitan Housing

8   Development Corp., 429 U.S. 252, 265 (1977).

9         In this case plaintiff claims in conclusory fashion, and without any supporting facts, that

10   the ICC determined to retain and to transfer him solely on the basis of his race, while other

11   prisoners of a different race were released to general population and not transferred.  While

12   plaintiff appears to be a member of a protected class, his conclusory allegations are insufficient to

13   sustain an Equal Protection claim.  For example, plaintiff fails to advise the court whether the

14   other Asian prisoners were also transferred, or whether the African-American prisoners were

15   exonerated by the investigation, or whether the allegations against and security considerations

16   regarding other suspects were comparable to his own.  The undersigned accordingly cannot

17   determine whether the other prisoners were similarly situated for equal protection purposes, or if

18   defendant and other non-defendant decisionmakers were motivated by race or by other factors,

19   such as prison safety and security.

20         In accordance with the above, IT IS HEREBY RECOMMENDED that:

21         1.   Defendant's motion to dismiss (ECF No. 25) be granted;

22         2.   The amended complaint be dismissed without prejudice; and

23         3.   Plaintiff be granted an opportunity to file a second amended complaint within twenty-

24             eight (28) days of any order adopting these findings and recommendations.

25   These findings and recommendations are submitted to the United States District Judge assigned to

26   the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-eight days after

27   being served with these findings and recommendations, any party may file written objections with

28   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

12

1    Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served

2    and filed within twenty-eight days after service of the objections.  The parties are advised that

3    failure to file objections within the specified time may waive the right to appeal the District

4    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

5    DATED: June 6, 2013

6                                                          _____
                                                            ALLISON CLAIRE
7    AC:rb/thao2235.fr                                      UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13